IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS CEPEDA-HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> FIRST TRANSIT, INC., FIRST TRANSIT DE PUERTO RICO, INC., <br><br> Defendants. | CIVIL NO. 08-1002(JAG/CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Carlos Cepeda-Hernández (hereafter "Cepeda-Hernández"), his spouse and minor children filed a complaint against defendants First Transit, Inc. and First Transit of Puerto Rico, Inc., (hereafter "defendant First Transit") pursuant to the Employment Retirement Income Security Act, Title 29, United States Code, Section 1001, *et seq*., to recover from defendant First Transit civil penalties, expenses, attorney's fees and costs.

Plaintiff Cepeda-Hernández was an employee of defendant First Transit since September 1, 2006 until August 13, 2007, when he voluntarily resigned. He was at the time of his employment a participant of the group health plan which was maintained by defendant First Transit. Plaintiff Cepeda-Hernández' action is grounded in that, during his employment, neither defendant First Transit nor the Group Associates which maintains and provides services to the health plan, sent the required notices as to the rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Upon termination, Cepeda-Hernández also claims defendant nor its designee complied with notification requirements, failed to provide the COBRA election materials and, thus, impaired access to medical services. (Docket No. 1).

On February 26, 2009, defendant First Transit filed a Motion for Summary Judgment, Memorandum of Law in Support thereof and Statement of Material Uncontested Facts. (Docket No. 21). Plaintiff Cepeda-Hernández filed a response arguing defendant's previous motion had failed to totally address the notice requirement during employment tenure while solely discussing the notice allegedly sent upon termination, as both notices are required by law. (Docket No. 30).

Defendant First Transit sought leave to file a reply that became due on May 4, 2009. It therein argued being uncontested that timely notice was sent to plaintiff's last address after the event of his voluntary resignation. Insofar as the alleged lack of first notice, defendant submits plaintiff has not established suffering any prejudice or that defendant acted in bad faith. (Docket No. 35).

We are thus now in a position to entertain defendant's summary judgment request.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id*. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the

evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

In Torres Rosado v. Rotger Sabat, 204 F.Supp. 2d 252 (D. Puerto Rico 2002), *affd.* 335 F.3d 1 (1st Cir. 2003), the presiding judge clearly indicated that oppositions are required by the district court's local rules and, as such, deemed that a motion for summary judgment, and the factual assertions supporting it, to be unopposed, because plaintiff had failed to timely file his opposition (*holding* that the district court in Puerto Rico is justified in having one party's uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules).[1] The moving party's uncontested facts and other evidentiary facts of record on an uncontested motion for summary judgment must still show that said party would be entitled to summary judgment. A district court may not automatically grant a motion for summary judgment simply because the opposing party has failed to comply with a local rule requiring a

---

[1] *See, e.g,* Cordero Soto v. Island Finance, 418 F.3d 114 (1st Cir. 2005); United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 330 & n. 10 (1st Cir. 2003); Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33-34 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000).

response within a certain number of days. *See* NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7-8 (1st Cir. 2002); *see also* Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 43 (1st Cir. 2004) (*finding* that failure to comply with then Local Rule 311.12 admits the veracity of the movant's version of material facts).

## UNCONTESTED ISSUES OF FACTS

The following material facts, proposed by defendant and considered relevant for resolution of the pending motion for summary judgment, are uncontested:

1. On September 4, 2006, First Transit hired plaintiff Cepeda-Hernández as a technician. On August 13, 2007, plaintiff resigned from his employment. *Defendant's Unopposed ¶2; Exhibit I, ¶ 3.*

2. According to First Transit's records, specifically the Human Resources database and the personnel file that is kept, Cepeda-Hernández' address is PO Box 43001, APT 394, Río Grande, Puerto Rico 00745. This was the same address that Cepeda-Hernández provided in his job application and union check-off card when he commenced employment, and the same address that appears in the I-9 form and W-4 statement that Cepeda-Hernández signed when he commenced employment. The address that appears in the First Transit database is used to send employees mail regarding benefit issues and other matters, such as the income tax earnings statement and the liquidation of accrued wages, such as the annual bonus for terminated employees. Correspondence that has been sent to plaintiff Cepeda-Hernández' address on file with First Transit has never been returned by the United States Postal Service. The last correspondence First Transit sent to Cepeda-Hernández was the annual bonus payment for the year 2007 on December 10, 2007, and the income statement for income earned in 2007 (499PR/W-2) form that was sent on January 31, 2008. Both items were sent by certified mail and were claimed. *Deft's Uncontested ¶4, Exhibit I, ¶ 4.*

3. First Transit engages the services of Group Associates as the health plan benefits administrator at a national level, including Puerto Rico. In these functions, Group Associates is in charge of enrolling employees in the company's sponsored health plan and managing COBRA compliance. In order to contact employees, Group Associates obtains employee information, such as their addresses, by accessing First Transit's Human Resource databases. *Deft's Uncontested ¶5, Judith Porter's, Director of Benefits Administration of Group Associates Unsworn Statement under Penalty of Perjury, ¶ 3, Exhibit II; Exhibit I, ¶ 5.*

4. Group Associates is a third party benefits manager. Companies that wish to outsource the administration of employee benefits, such as group health plans, engage the services of Group Associates. *Deft's Uncontested ¶6; Exhibit II, ¶ 1.*

5. Group Associates obtains employee information needed to perform services to First Transit from First Transit's Human Resources database. Specifically regarding Plaintiff Cepeda-Hernández, Group Associates received notice through the system that a qualifying event occurred August 13, 2007. Following established protocol, on August 28, 2007, Group Associates sent by First Class mail the "COBRA packet" to Cepeda-Hernández and his qualified health plan beneficiaries, in this case Cepeda's spouse Lilia Taboada, and his children Carlos, Obed, and Joshian Cepeda, to the address that appeared in the First Transit database. *Deft's Uncontested ¶¶ 7-8; Exhibit II, ¶¶ 2, 3.*

6. Group Associates retains a PDF copy of the envelope in which the COBRA packet was sent as evidence of having executed notice. *Deft's Uncontested ¶8, id.*

7. Because neither Cepeda-Hernández nor his beneficiaries elected to enroll in continued group health plan coverage under COBRA, on November 2, 2007, Group Associates sent to Cepeda-Hernández by First Class mail a letter advising that the Health Benefits Continuation Plan could not commence. To this date, Group Associates has never

received notice from the United States Postal Service that the COBRA packet sent to Cepeda-Hernández on August 28, 2007 or the letter of November 2, 2007, was undelivered. *Deft's Uncontested ¶8, Id.*

On the other hand, plaintiff Cepeda-Hernández' opposition to defendant First Transit's motion submits:

Defendant's uncontested ¶¶ 1-4 were admitted by plaintiff. As to the statements identified as 4-5 (a numbered mistake), these are objected for considering hearsay the statement of Ms. Katty Ayala because she lacks personal knowledge as to the independent company Group Associates who is the one sending notices regarding the health plan benefits. *Plaintiff's Uncontested ¶1-4.*

Plaintiff Cepeda-Hernández' denial is for not ever been sent notice related to benefits under COBRA, either during his tenure with defendant nor after his termination. This claim is based in that plaintiff submits not having received notice related to benefits and its rights. *Plaintiff's Uncontested ¶3, Exhibits 1, 2.*

Plaintiff states defendant First Transit has not alleged nor has presented any document of having sent the appropriate initial notice under COBRA.

Defendant's Uncontested ¶¶ 6-7 are admitted by plaintiff, except for the second, third, fourth and fifth sentences of ¶7. Documents attached as to ¶8 are considered incomplete and unreadable and the documents are not signed.

Plaintiff denies having received the letter of November 2, 2007, indicating defendant has presented no evidence of its deposit in the mail.

Plaintiff denies having received or sent a plan's summary description.

As a result of not having the COBRA information, plaintiff did not have the opportunity to enroll in the continued health plan coverage. *Plaintiff's Uncontested ¶6.*

## LEGAL ANALYSIS

In light of the above, defendant has established as uncontested issue of material fact having sent plaintiff Cepeda-Hernández the required notice of COBRA within the time frame required after the event of voluntary termination to the last known address. Plaintiff's statement of not having received same is not sufficient to deny the notice was sent, which is the legal requisite imposed on a defendant, not establishing that notice had indeed been received. However, defendant First Transit has not established as uncontested issue of material fact having notified to plaintiff Cepeda-Hernández the initial notice nor having provided the plan summary at the time of employment or having notified remaining plaintiffs Ms. Lilia Taboada and the three minor children the required notices. *(Statement under Penalty by Ms. Lilia Taboada, Plaintiff's Exhibit 2)*.

COBRA requires employers to give employees the opportunity to continue health care coverage for a specified period of time after a qualifying event, at the employee's expense. Title 29, United States Code, Section 1161(a); *see* Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 103 (1st Cir. 2004). Termination of employment is considered a qualifying event. Title 29, United States Code, Section 1163(2). COBRA also requires employers to notify health care plan administrators of the termination within thirty (30) days of the qualifying event. *Id*. § 1166(a)(2).

Thereafter, plan administrators have fourteen (14) days to notify the qualified beneficiary of the right to continued coverage. *Id*. § 1166(c). COBRA does not state how notice should be given. But courts addressing this issue have held that a good faith attempt to comply with a reasonable interpretation of the statute is sufficient. Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1383-84 (10th Cir. 1997) (internal quotation marks omitted); *see also, e.g.,* Degruise v. Sprint Corp., 279 F.3d 333, 336 (5th Cir. 2002) (employers are required to operate in good faith compliance with a reasonable interpretation of what

adequate notice entails). (internal quotation marks omitted); Branch v. G. Bernd Co., 764 F.Supp. 1527, 1534 n. 11 (M.D.Ga. 1991) (courts have generally validated methods of notice which are calculated to reach the beneficiary.), *aff'd* 955 F.2d 1574 (11th Cir. 1992). Several courts have specifically found that employers are in compliance with § 1166(a) when they send COBRA notices via first class mail to an employee's last-known address. *See* Holford v. Exhibit Design Consultants, 218 F.Supp.2d 901, 906 (W.D.Mich. 2002); Torres-Negrón v. Ramallo Bros. Printing, Inc., 203 F.Supp.2d 120, 124-25 (D. Puerto Rico 2002). *See also* Torres Negrón v. Merck & Company, Inc., 488 F.3d 34 (1st Cir. 2007).

The Court of Appeals for the First Circuit determined in Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99 (1st Cir. 2004) that fact issue as to whether employer had mailed to terminated employee notification of right to extended health care coverage under employee benefit plan required by COBRA precluded summary judgment for employer in employee's action alleging failure to comply with statutory notice requirement. Therein, the only evidence of notification in employer's possession was note written to employee stating that employer had never received return receipt for certified-letter notice, and unsigned Postal Service form used to record receipt, neither of which compelled conclusion that notice was mailed.

An employer has statutory duty to maintain records sufficient to show that it complied with COBRA and the burden to prove compliance was shifted to the employer because an employer's failure to maintain these records should not allow to defeat employees' right to recovery.

As to the second notice requirement, defendant First Transit has established compliance with the notice requirement to the record address of plaintiff Cepeda-Hernández in a timely fashion upon termination of employment. Although plaintiff negates having received such notice, the substantive provisions of notifying to the last known address, having been correctly determined, as well as providing evidence of the addressed envelope

in a timely fashion, seem sufficient for determining no controversy of material fact as to this second notice having been adequately mailed as to plaintiff Cepeda-Hernández.

Still, COBRA also requires the insurance plan to provide employees notice of their rights under COBRA on two separate occasions. The first notice must be given when coverage commences under the plan, in this case after the initial ninety-day period from time employment started, which is seemly September 1, 2006 when Cepeda-Hernández began his tenure with the employer. Title 29, United States Code, Section 1166(a)(1). The second notice must be given to the employee by the plan administrator after a qualifying event occurs, in this case upon termination of employment by resignation of Cepeda-Hernández on August 13, 2007, which would be considered the qualifying event. Title 29, United States Code, Section 1166(a)(4).

Section 1059 requires employers to maintain records sufficient to determine the benefits due or which may become due to its employees. COBRA right was duly notified as to plaintiff Cepeda-Hernández to continue his health care coverage. Accordingly, in its role as employer, First Transit has a statutory duty to maintain records to determine if notice was given pursuant to Section 1166. However, First Transit had Group Associates as the one to maintain the group health plan, for which as an administrator of the plan, under § 1166(a)(4), it would be for the Group Associates, not to the employer First Transit, the one with a duty to provide COBRA notice to the employee. *Id*. Section 1059. Section 1027 (1988) imposes a record keeping requirement on administrators.[2]

Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723 (8th Cir. 1995) discussed the COBRA statute which explicitly requires notice to be given to any qualified beneficiary, and defines a covered spouse to be a qualified beneficiary. Title 29, United States Code, Section

---

[2] In Phillips v. Riverside, Inc., 796 F.Supp. 403, 407 (E.D.Ark.1992), the court determined that the employer did not prove it sent the second COBRA notice because it could not produce a properly addressed COBRA notice, it did not document when the COBRA notice was sent to Phillips, there was no testimony that anyone actually deposited Phillips' COBRA notice in the mail, nor was any evidence of the employer's customary mailing practices introduced.

s 1166(a)(4), 1167(3)(A)(I). A covered spouse has his/her own rights under COBRA, which are not dependent on the covered employee's rights. For example, a covered spouse might choose to elect coverage while the covered employee does not, or they might choose different plans. Title 29, United States Code, Section 1165(2). The covered spouse often may be a qualified beneficiary where the covered employee is not: a covered spouse is specifically defined as a qualified beneficiary, Title 29, United States Code, Section 1167(3)(A)(I); a covered employee, on the other hand, is a qualified beneficiary only when he/she is terminated other than for gross misconduct or experiences a reduction in hours, Title 29, United States Code, Section 1167(3)(B).[3]

Taken together, Sections 1165(2) and 1166(c) indicate that qualified beneficiaries are to be treated separately for COBRA purposes except in these specifically-defined exceptions, both of which operate in favor of coverage. Moreover, these two provisions strongly suggest that had Congress intended notice to a covered employee to serve as notice to that employee's covered spouse as well, it would have so provided. Case law from other courts also supports that notice to a covered employee does not fulfill the statutory requirement of notice to a covered spouse.

Similarly, the Seventh Circuit held that because the duty to notify does not depend on the employee's knowledge, [l]ikewise, an employee's knowledge cannot affect his spouse's right to notification or election. *See* Misna v. Unitel Communications, Inc., 41 F.3d 1124, 1129 (7th Cir. 1994) (holding that even though the covered employee knew of his rights and chose not to elect coverage, and his wife obtained coverage through a different provider, the court could not infer that she would have declined continuation coverage if she had received

---

[3] Under COBRA, an employer who sponsors a group health insurance plan must offer employees and the qualified beneficiaries, including spouses and dependent children, the opportunity to continue their health insurance coverage at group rates but at their own expenses, for at least eighteen months after the occurrence of a qualifying event and notice to the affected employee. Gaskell v. Harvard Co-op Soc., 3 F.3d 495 (1st Cir. 1993).

the required notice);[4] *see also* Burgess v. Adams Tool & Eng'g, Inc., 908 F.Supp. 473, 478 (E.D. Mich. 1995) (notice must be provided to all qualifying beneficiaries and not just to the employee.) (citations omitted).

In Lincoln General Hosp. V. Blue Cross/Blue Shield of Nebraska, 963 F.2d 1136, 1140 (8th Cir. 1992), the Eighth Circuit held that the plan administrator had satisfied the notification requirement not because the employer gave the COBRA notice form to the covered employee to deliver to his ex-wife (the finalization of the divorce was the qualifying event, triggering the ex-wife's COBRA rights), but because the insurer sent an identification card, premium statement, and benefits information to the ex-wife herself.

The Eleventh Circuit's in Meadows v. Cagle's, Inc., 954 F.2d 686, 688 (11th Cir. 1992) stated the court held sufficient a notice that was mailed to the covered employee not at her last known address, but at her husband's last known address. In this case, the employee was in a persistent vegetative state, her last known address was the medical facility in which she was hospitalized, and it was clear that her husband was handling her insurance coverage on her behalf.[5]

Although defendants in similar situations have argued that, to require actual notice to each beneficiary would turn COBRA into a technical labyrinth, the clear language of the statute not only mandates actual notice, but establishes a simple requirement that will not mire plan administrators and courts in fact-specific inquiries as to whether a covered employee actually notified the covered spouse, whether that notification adequately

---

[4] The compulsory character of COBRA's notification requirement has been repeatedly upheld by federal courts, even where the qualified beneficiary had received the initial COBRA notice at the commencement of his/her coverage or where the employee had personal knowledge of his/her COBRA rights. Misna 41 F.3d at 1129; Berríos Cintrón v. Capitol Food, Inc., 497 F.Supp.2d 266 (D. Puerto Rico 2007).

[5] Though the court did not explain its reasoning for holding the notice satisfactory despite its mailing to an address other than the beneficiary's last known address (as required by the plan in that case), see Id. at 688 n. 2, the factual situation suggests that the court considered the beneficiary's inability to make an informed decision, and her spouse's need to make the decision for her. Nothing in Meadows suggests that notice to the spouse of a qualified beneficiary, is a satisfactory substitute for notice to the beneficiary herself.

informed the spouse of his or her rights, and so on. *See* McDowell v. Krawchison, 125 F.3d 954 (6th Cir. 1997) (notice to employee did not satisfy plan administrator's obligation to give notice to spouse).

In the instant case, notice to the spouse and/or the minor children, who are also parties to this federal lawsuit, seems to have been made only as to the second notice upon termination of Cepeda-Hernández, by merely placing the spouse's name in the same envelope where notice was sent to the former employee Cepeda-Hernández, not as a separate notice. However, as to the first notice requirement, notice to the spouse and minor children was not addressed at all by defendant First Transit nor established by the administrator Group Associates.[6] Insofar as initial notice to Cepeda-Hernández upon commencement of employment tenure, all that defendant First Transit argues is that prejudice was not established or that such a failure was not made in bad faith. Still, the complaint filed indicates plaintiff incurred in expenses of at least $500.00, because of lack of medical plan benefits. Additionally, whether there is prejudice or bad faith may be considered by the court when imposing the penalty for non-compliance with COBRA under Section 1132(c) and it is within the discretion of the court. Daniel v. Eaton Corp., 839 F.2d 263, 268 (6th Cir. 1988).

Under Section 1166 (a)(1), the group health plan is to provide, at the time of commencement of coverage under the plan, written notice to each covered employee and spouse of the employee (if any) of the rights provided under this subsection.

---

[6] Thus, the statute's notice provisions have not been construed as treating the covered employee and his or her spouse as a unit for notice purposes, such that the plan administrator is absolved of its duty to notify the spouse.

Plaintiff's opposition to defendant First Transit's request for summary disposition reiterates there is no claim or evidence that the first notice was ever provided,[7] for which summary judgment is not appropriate to dispose of the issues raised in the complaint nor with the averment in the opposition that as a material fact in controversy such first notice was not received by plaintiff. Plaintiff additionally objects proper notice since some of the documents submitted by defendant were unreadable and lack any signature, although the attachment included with defendant's statement of uncontested facts and filed with the Court were all legible.[8]

Still, having defendant First Transit failed to establish there is no material issue of fact in controversy that would entitle summary judgment as to compliance with COBRA's first notice nor as to last notice to remaining plaintiffs (Ms. Lilia Taboada and the three Cepeda minors children) summary disposition requested by defendant First Transit is not considered appropriate.

## CONCLUSION

In view of the above discussed, defendant First Transit's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of May of 2009.

        s/**CAMILLE L. VELEZ-RIVE**
        **CAMILLE L. VELEZ-RIVE**
        **UNITED STATES MAGISTRATE JUDGE**

---

[7] Defendant's reply of May 4, 2009, (Docket no. 35) served little purpose in establishing as uncontested the notice requirements, being geared to counsel's arguments as to lack of bad faith or prejudice. As such, the previous filings were the ones to establish contested and uncontested issues for purposes of summary disposition.

[8] Rodríguez v. Int. College of Business & Tech., 364 F.Supp.2d 40 (D. Puerto Rico 2005) (information to be provided should contain enough information for plaintiff, former employee, to understand the substance of the benefits available or to conclude that he was eligible to continue medical coverage so as to make an informed decision on whether to elect continued coverage under the plan); McDowell, 125 F.3d at 958.